We have one case for argument today, 20-3751CV, McDonald's Corporation v. Vanderbilt Atlantic Holdings LLC, and we'll hear first from the appellant, Stephen Meister, who has reserved two minutes. I cannot start my video. Your Honor, I don't know if you can hear me. I'm unable to start my video. Oh, here we go. Good afternoon, Your Honors. Can you hear me okay? Sure. Great. Thank you. Okay. Thank you, Your Honors. Stephen Meister for the appellant Vanderbilt, if it was a very simple case and appeal. Really, McDonald's at its complaint alleges not a failure to cooperate, but simply a failure to agree. Sorry. If Your Honors look at the and the preceding page, at paragraph 64 to 66, what McDonald's, the appellee alleges is that Mr. Tenor, this is paragraph 64, failed to properly compare and adjust the rental data that had been obtained by its appraiser, Ms. Locatell, and that Mr. Tenor, that's appellant's appraiser, had failed to explain why he couldn't make those adjustments. And so they are saying, Your Honors, that Mr. Tenor erred by failing to and refusing to comply with what their appraiser, Ms. Locatell, had come up with, because they thought that's what he should do. At paragraphs 58 through 61, which appear on the preceding page of the record, appendix 20, McDonald's gets into what I will explain is a related issue. They talk about... What paragraphs? This is paragraphs, Your Honor, 58 through 61 of the complaint at appendix 20. Okay? And what they talk about here is that there was a meeting of the party's transactional lawyers and the appraisers at which a contention was made by McDonald's that, under New York law, the encumbrance represented by the lease was required to be taken into account and it was not by Mr. Tenor. That's what these paragraphs relate to. Now, although the complaint doesn't specifically state the case in issue, and frankly it doesn't have to, I don't think there's any disagreement that McDonald's was referring to the Court of Appeals decision in the 936 Second Avenue case. In any event, what they allege is that at that meeting, or following that meeting, Mr. Tenor then agreed to take the lease, the encumbrance represented by the lease, into account. Not necessarily that he agreed that that's what the case required, but that he was agreeing to do it. And then when he did it, McDonald's complains that after he took the encumbrance of the lease into account, he didn't change his value conclusion, which was $1,348,000. That's not the rental value, that's the, I'm sorry, that is the rental value, I beg your pardon. He didn't change his 100% rental value conclusion. Now, what this goes to is the lease contains four five-year options. There's no dispute about this, this is in the record, and so what happens is the first of those four five-year options was exercised. That, of course, is what gave rise to the need to value the rent, and there's also no dispute that the rent that's determined for the first of the four five-year option periods then controls, subject to a certain percentage increases that are specified, the second, third, and fourth five-year options. So what happened was when Mr. Tenor agreed to take into account the encumbrance by the lease, represented by the lease, because there were 20 years worth of options controlled by McDonald's, he felt that was apparently a long enough term to permit the hypothetical development of the property because the option rent addendum calls for it to be appraised on a vacant basis. In the option rent addendum, I want to get to this quickly, which is appendix 58. It states, the rental value will be established based upon a definition of fair rental value as the price which an average well-informed tenant would pay and an average well-informed landlord would accept, exclusive of tenants' improvements, knowing all the uses to which the property can be put, without the rest on either party. So what the appraisers were doing here, they were looking at existing zoning law. They were saying, okay, what can be built on this property under zoning? They were then saying, we're going to pretend the property is vacant, even though it's not, because that's the hypothetical exercise. And what really happened is that Mr. Tenor took into account 20 years and said you could build this one-story building on the allowable percentage of land. And Ms. Locatell said, well, there's a five-year, they've only exercised a five-year option, so I'm going to come to a conclusion that a smaller building could be built. The point is, your honors, and this is the main takeaway, that every single solitary grievance they have about how Mr. Tenor conducted his appraisal is an absolutely core appraisal issue. There is nothing collateral about these issues. This wasn't a dispute about a failure to agree on a third appraiser or a refusal to pay for a third appraiser or anything collateral to the absolute core appraisal issues. Every issue, the suitability of the comparables, whether appropriate adjustments could be made, whether you take the lease as an encumbrance into account, and if so, whether you should consider the first five-year term or all four terms adding to 20 years. And finally, there was a correlative grievance that Mr. Tenor used what's called the land residual technique as opposed to the standard market data technique, which is the technique you use when you're adjusting comparables. So everything is kind of related to one another, but the three disputes, the technique, land residual, or standard market data, whether the and the lease as an encumbrance, and if so, how long an encumbrance it is, are all entirely core appraisal issues. And if this decision is affirmed, what you will be doing is you'll be allowing an arbitrate, the party who has agreed to binding arbitration, by simply characterizing a core appraisal issue as a failure to cooperate, and all of a sudden it becomes a court action. There's no mention of the word bad faith or good faith in the option rent addendum when it comes to this single sentence that says that if there's a failure to cooperate, and all the language about the failure to cooperate is directed to time. If the party, this is A58 of the addendum, of the appendix, if the parties fail to choose an appraiser within the specified time period, or fails to cooperate in any way, so that the process described above, the appraisal process, cannot be completed prior to 120 days of the expiration of the primary term. So, Mr. Meister, you've reserved some time, and I think I've given you a little extra time, but why don't we hear from counsel for McDonald's. Thank you, Your Honor. Good afternoon. May it please the court, Brendan Walsh on behalf of McDonald's Corporation. This appeal involves a straightforward legal issue that can easily be resolved by applying this court's settled precedent to the facts and claims pleaded by McDonald's. In attempting to convince this court that McDonald's claims for declaratory relief are independent appraiser, Vanderbilt inaccurately describes both McDonald's claims and the factual allegations underlying those claims in a way that is utterly unfaithful to the record. Of course, in deciding a motion to compel arbitration, the court must accept as true all of the allegations in McDonald's complaint. And what McDonald's has alleged is far more than what Vanderbilt has called a professional disagreement among appraisers. McDonald's briefs the lease and engages in a pattern of bad faith conduct in an effort to corrupt the contractually required fair market valuation process. We allege that Vanderbilt's goal is to constructively eject McDonald's from the property so that it can quickly obtain a rezoning and redevelop it with a high-rise mixed-use building. This is all in our complaint. Applying McDonald's actual allegations and claims to the law, the district court correctly held that McDonald's claims are not subject to the narrow arbitration provision contained in the party's lease. I want to start by addressing an argument that Mr. Meiser focused on for most of his argument, and this was an argument we didn't have an opportunity to address in our brief because Vanderbilt raised it for the first time in its reply. Let me interrupt you for a second to ask a question. Isn't the gist of McDonald's arguments that your adversary did not honor the terms of the arbitration agreement, that your adversary refused or did not prepare its appraisal in accordance with the standards that the agreement required for the appraisal, including taking one thing into account and using the methods that were sanctioned and required by the arbitration agreement? Isn't that a manner in which you process? Yes, that's certainly part of it. It's not all of it, but that's certainly a big part of our argument. What happened in April of 2019, Vanderbilt had its appraiser prepare an appraisal using what's called a land sales comparison approach. That approach is not contrary to the terms of the lease and New York law. They also directed their appraiser not to consider the encumbrance of the lease and existing zoning regulations. It wasn't until August of 2019 after the 120-day period applied that they finally conceded that their appraiser had done it again and come up with exactly the same number after purporting to do the things that you say were not done properly the first time? Is your claim that that's apparently fraudulent bad faith to completely change the method and now take into account something that wasn't taken in before and yet nonetheless come up with exactly the same number? I understand your contention to be that's a phony. That's pretending to do what was required but not doing it. Yeah, and again, that's part of our argument. I mean, I think we don't agree that they did it properly. We think that there are other things wrong with the appraisal, for example, rather than completely scrapping the original appraisal which by any definition, any interpretation of the lease is improper. They continued to use that identical analysis and at the end of it just simply added on what's called the land residual technique and they came up magically with the identical number but they also didn't, even though he claims to have considered the 936 2nd Avenue case, we actually don't think he did because he actually also takes into account the possibility of upzoning which is also not compliance with the 936 2nd Avenue case and another important part of our claim is also that there was a pretty substantial disagreement between the was going to have. We believe that the lease requires that the party's appraisers work collaboratively with the third appraiser. Vanderbilt was refusing all along to have the appraisers speak with one another. We believe that was part of their pattern of misconduct that was designed to artificially inflate the value. They contend essentially that the appraisers couldn't speak with one another and that unless they agreed to the penny in a blind envelope swap that the appraisals would need to be averaged and they were using a non-compliant number, a non-compliant appraisal and their hope was that it wasn't going to agree to the penny and that they could sort of artificially have the appraisers get to an averaging. As I understand it, doesn't the success of your position that this should not be arbitrated depend on your convincing the court that what Vanderbilt did was obstructive non-compliance with the arbitration agreement? Not a technical demonstration that it should have done something differently in the arbitration but that they were obstructively not complying and pretending to comply by saying that they on the second go-around they were doing it the way you said but they really weren't. Right, so our claim is a failure to cooperate. It's a declaratory judgment seeking of a confirmation from the court that Vanderbilt failed to cooperate such that the process could not be completed in 120 days. Our claim is that Vanderbilt was pretending to comply but they weren't. They were also obstructing with the how the three appraisers were going to work together. Now they completely ignore that allegation or complaint and even below they were arguing, I think this is at page 14 of their brief in the district court, which they've included in the appendix, so that's actually page A82 of the appendix, they also argue that the appraisers would need to determine what the process was, you know, what the contract required for how the appraisers were going to work together. They've abandoned that claim but they didn't do that until December of 2020 when they filed their, actually an amended answer and counterclaims below. And so even just the process, you know, even the fact that they've now agreed that the three appraisers should work collaboratively, that if anything bolsters our argument that the three appraisers, that they failed to cooperate below and that they've been completely obstructing. You know, this argument that we have not actually pleaded a failure to comply. We argued now that they've forfeited it, that it's been waived because their whole argument below was that all of these issues are subject to arbitration. But what the contract actually says is failure to cooperate in any way. It doesn't limit it to what they call procedural delay tactics. We believe that our detailed complaint lays all of that out in very great detail. The words in any way cannot reasonably and be interpreted to only encompass what they call these procedural delay tactics. We also, they also claim that we try to read the 120-day deadline out of the complaint or out of our allegations. That's not at all true. And I refer the court to paragraph 80 of our complaint, A24, where we note that their bad faith misconduct prevented the parties from completing the process within 120 days. And again, you know, they say over and over that we should have let the process play out, but we couldn't do that because they were refusing to allow the appraisers to work in the manner that they were, that they're required to under the, under the lease. We think this case is squarely controlled by McDonnell Douglas. This is a narrow arbitration provision. The appraisers have a very limited and defined role. All they can do is estimate fair market opinion of, in a letter, opinion of value. And, you know, the selection of commercial appraisers shows that the parties did not intend to arbitrate questions of good faith. That's in both Milligan and McDonnell Douglas, because our case really is about bad faith misconduct, not any technical appraisal issues. And then finally, as the district court noted, there's a common sense argument of a failure to cooperate under the agreement renders the third appraiser's role meaningless. So the parties could not possibly have intended for the appraiser to determine cooperation, because if the third appraiser determines that Vanderbilt failed to cooperate, the third appraiser's role is rendered meaningless and the appraisal, the process is over. So it just, it would lead to an absurd result. And as this court knows, the contract should not be interpreted in ways that would render something absurd. So unless the court has any further questions, I'm prepared to stand on our briefs. Thank you, Mr. Walsh. Mr. Meister has reserved two minutes. Thank you, Your Honor. Your Honor, I would respectfully direct the court's attention again to A58 of the appendix, the second page of the option rent addendum. In the third paragraph, it says the standard market data approach technique for valuing vacant land shall be used. All comparable leases shall be appropriately adjusted, etc. Then it goes on. If adequate comparable leases are not available, then a land residual technique as defined by the American Institute of Real Estate Appraisers shall be used. So this was not a noncompliant appraisal. Again, all we have here is a failure to agree on the comps and on the term. I want to talk for a second about the non-changing of the value conclusion after the lease was taken into account. What this option rent addendum is saying is, pretend the land is vacant, look at the existing zoning, and figure out what someone would pay for the land. When you do that, if you take into account the term of the lease, you say, okay, if there was 20 years left in the lease, would an investor be able to build a one-story building on, for example, a third of the land? So when Mr. Kenner did that, he didn't change his value conclusion. That wasn't fraudulent. That wasn't ill-spirited or non-conforming or obstructive. It was his honest conclusion. Think about it this way, your honors. Mr. Meister, isn't that exactly the question that would be left for the district court? And if the district court concludes that there is no obstructive conduct, that there was no lack of cooperation, otherwise there was no violation of the contract, then yeah, then you'll go into the world that you want to. Respectfully, I don't think so, because the only way you figure out, your honor, if there was obstruction is to look at the merits of the arbitration question. Let me ask you this. Let me ask you this. Is there, in your view, any way in which someone could have violated this contract that would not be subject to what you term the arbitration provision? Yes. I'm glad you asked, your honor. For example, if there was an obstruction in terms of approving a third appraiser, if there was a refusal to agree upon paying the fees of the third appraiser. I guess I'm not seeing how that's different from your argument, because all those things are germane to the appraiser. I guess I'm not seeing. I'll tell you exactly how they're different, your honor. This is my litmus test. This is how I see it. Anyway, if you affirm this decision, and we go back to the district court for this case, the trial or summary judgment practice, whatever happens, there is literally no way for this judge to come to a conclusion about whether our conduct was obstructionist or not, without taking expert appraisers before the court to offer opinions about whether what Mr. Kennard did was right or wrong under appraisal standards. Were the comps good comps? Were they adjustable? Was 20 years versus five years the right term to consider as an encumbrance? And was it correct to say that with 20 years, you don't change your value conclusions? I don't see how that helps your argument. I mean, if one agrees with you, yes, yes, in order to adjudicate whether there was obstruction, bad faith obstruction, obstruction, refusal to cooperate, refusal to follow the commands of the arbitration agreement. If one, the fact that one needs to look at the arbitration agreement and interpret it to do that doesn't mean that this is within the subject matter of the expertise of appraisers, or is otherwise than a question for a court. The answer that is being sought is whether the conduct was conduct violative of the contract and obstructive to the objectives of the contract. And the fact that answering that question might require the court to consider the terms of the Well, I would flip around the question that was just put to me and say, there's literally no appraisal issue that would then ever go to the appraisers as long as the party who is unhappy with the other parties appraiser says, well, that opinion that process that that that conclusion that you came to was obstructionist, you get out, you get every case that should go to arbitration back to court. I think the fundamental inquiry here let's assume the district court concluded that there was nothing obstructionist. The district court could reach that conclusion without deciding who's presented the better appraisal. And we'd send the parties back and say, guess what, there has been compliance with the contract. Now go off, hire your third appraiser and go about your business, right? And then everyone's put back where that would put me in appraisal, maybe two or three years late. And the whole the whole gist of the agreement that the parties made your honor was that the third appraiser would break this deadlock. It says on page 857 of the record, the three appraisers. Sorry, the decisions of the appraisers or a majority of them shall be binding on the party. So if the appraisers disagree or have values that are 15 percent or more apart, you appoint a third appraiser and you go to the third appraiser with this issue. Miss Locatell should be saying to the third appraiser why her comps are good and her agrees. Mr. Tenor should be saying the land residual technique is the right way. Miss Locatell should say the standard market data technique is right. Miss Locatell should say it's five years. Mr. Tenor should say it's 20. Those are all core appraisal issues. And the appraiser decides who's right. If McDonald's is right and if they had the courage of their convictions, they would put this to the third party appraiser and he would agree with Miss Locatell. But instead, I'm in court for three years while they're paying their old rent. I don't think that's consistent with the policies of the Federal Arbitration Act. Respectfully, your honor. Thank you, Mr. Meister. Thank you. We will reserve decision in 20-3751. There are four other cases on the calendar, all of which are on submission. 17-1759, USA v. Cosme. 20-1488, Brooks v. Dash. 20-1624, USA v. Martinez. And 21-457, USA v. Sukdeo. All of these are on submission. The clerk will adjourn court.